**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**SABRINA HARVEY,**

      Plaintiff,

v.

**UHS PRUITT HOLDINGS, INC.,
LOWNDES COUNTY HEALTH
SERVICES, LLC, d/b/a HERITAGE
HEALTHCARE OF VALDOSTA**,

      Defendants.

Civil Action No. 7:14-CV-54 (HL)

**ORDER**

Plaintiff Sabrina Harvey, an African American woman, brings this action

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title

VII"), contending that Defendants UHS Pruitt Holdings, Inc. ("UHS-Pruitt") and

Lowndes County Health Services, LLC ("LCHS"), d/b/a Heritage Healthcare of

Valdosta,[1] discriminated against her on the basis of her race. She also asserts

claims for damage to her personal and professional reputation, intentional

infliction of emotional distress, and conspiracy to discharge and to deprive her of

equal protection of the law. Now before the Court is Defendants' Motion for

Summary Judgment. (Doc. 18). After reviewing the pleadings, briefs, depositions,

and other evidentiary materials presented, and determining that there is no

---

[1] Defendants note that LCHS formerly did business as "Heritage Healthcare of
Valdosta." Presently, LCHS does business under the moniker "PruittHealth-
Valdosta." The change does not substantively impact this case.

genuine dispute of the material facts, the Court finds that Defendants are entitled to judgment as a matter of law and grants Defendants' motion.

## I.      PLAINTIFF'S REQUEST FOR ORAL ARGUMENT

Plaintiff filed a Request for Oral Hearing in relation to the pending motion for summary judgment. (Doc. 19, p. 15). The Court has thoroughly reviewed the briefs and the evidence of record and concludes that a hearing is not warranted. Plaintiff's request for oral argument is therefore denied.

## II.     LOCAL RULE 56

Local Rule 56 provides,

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.

M.D.Ga. L.R. 56; see also Mann v. Taser Intern., Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (holding that district court properly deemed defendant's statement of material facts admitted when plaintiff failed to comply with the local rule); BMU, Inc. v. Cumulus Media, Inc., 366 Fed. App'x 47, 49 (11th Cir. 2010) (affirming grant of summary judgment when respondent failed to file a response to movant's statement of undisputed facts).

Plaintiff failed to comply with these requirements. Plaintiff filed what she captions as her response to Defendants' statement of material facts. (Doc. 19, pp. 4-6). However, Plaintiff's eight paragraph response wholly fails to address any of the 48 statements of fact propounded by Defendants and does not include a single citation to the record. The Statement of Material Facts contained in Plaintiff's response brief is similarly devoid of record citations and cannot be construed as either a response to Defendants' statement of undisputed material facts or as Plaintiff's statement of disputed material facts for the purpose of satisfying the rule. M.D.Ga. L.R. 56 ("Affidavits and the introductory portions of briefs do not constitute a statement of material facts.") The Court accordingly deems admitted Defendants' statement of facts that are properly supported by citations to the record.

## III.   FACTUAL BACKGROUND

Defendant LCHS, which operates the nursing home facility formerly known as Heritage Healthcare of Valdosta, hired Plaintiff Sabrina Harvey as a Licensed Practical Nurse ("LPN")[2] on March 12, 2009. (Doc. 18-2, ¶ 22; Doc. 18-5, pp. 32, 68). After working for LCHS for approximately eight months, Plaintiff became a

---

[2] Defendants' statement of facts indicates that Plaintiff was hired as a Registered Nurse ("RN"). (Doc. 18-2, ¶ 22). However, it is apparent from the remainder of the record and from Plaintiff's deposition testimony that, while Plaintiff later received her certification as an RN, she was employed by Defendants as an LPN. (Doc. 1, ¶ 21; Doc. 18-5, pp. 29, 68-69).

3

weekend supervisor. (Doc. 18-2, ¶ 4; Doc. 18-5, p. 70). Plaintiff worked as the weekend supervisor every other weekend. (Doc. 18-5, p. 70). The supervisory position increased Plaintiff's work responsibilities but not her salary. (Doc. 18-5, p. 83). Plaintiff continued to work during the week as an LPN but not in a supervisory capacity. (Doc. 18-5, p. 77).

In general, the nursing staff reports to the Director of Nursing ("DON"). (Doc. 18-5, p. 73). However, the DON typically does not work on the weekends and instead delegates her supervisory authority to a rotating crew of weekend supervisors. (Doc. 18-5, p. 73-74). The LPNs and CNAs on duty report to the weekend supervisor, who then conveys any issues that may arise to the DON. (Doc. 18-5, pp. 72-73). The weekend supervisor's role thus entails supervising staff, counseling staff, and addressing staff members' requests, complaints, and concerns. (Doc. 18-2, ¶ 23). It is the responsibility of the weekend supervisor to enforce policy and to report personnel issues to the DON for disciplinary action. (Doc. 18-5, pp. 78-81). The weekend supervisor plays no role in hiring or firing employees. (Doc. 18-5, p. 82).

Sometime in January 2011, Jennifer Simmons, an LPN also employed by LCHS, reported to LCHS's Administrator Phil Herndon that on January 7, 2011, Plaintiff, in the presence of Stephanie Burgess, a white LPN, and Yolanda Mincey, an African American LPN, made a comment to Simmons that Simmons

4

found offensive.[3] (Doc. 18-2, ¶¶ 24-26, 32; Doc. 18-5, pp. 91-92, 94; Doc. 19-1, p. 3).[4] Herndon instructed Simmons to direct her complaint to Simmons' unit manager, Rosalyn Blythwood, which she did on January 14, 2011. (Doc. 18-2, ¶¶ 27-28). Then, on January 18, 2011, Director of Health Services Valisa Jones convened a meeting with Simmons along with Pat Pitts, Alberta Daniels, and Rosalyn Blythwood, the nurse managers. (Doc. 18-2, ¶¶ 29-30; Doc. 18-5, p. 93). During the meeting, numerous issues were discussed, including Simmons' allegation that Plaintiff made what Simmons believed was a belittling comment in front of other staff members. (Doc. 18-2, ¶¶ 31-32). Simmons lodged a complaint

---

[3] The precise offensive remark is conspicuously absent from the record. Plaintiff purportedly said something along the lines of Simmons being "queen of the throne" (Doc. 18-4, p. 6) or "heir to the throne" (Doc. 18-5, p. 92). Neither party offers any context for the statement.

[4] Defendants object to the admissibility of the Investigator's Memorandum (Doc. 19-1, pp. 2-4) prepared by Investigator John Jarvis of the Equal Employment Opportunity Commission ("EEOC"). (See Doc. 20, p. 5 n. 3). In general, "this circuit considers EEOC determinations to be highly probative," and "administrative findings assessing claims of employment discrimination are admissible under [Fed.R.Evid. 803(8)(A)]." Barfield v. Orange Cty., 911 F.2d 644, 650 (11th Cir. 1990) (citations omitted). However, the court "may properly exclude EEOC reports that contain only legal conclusions or raise questions of trustworthiness." Young v. Fedex Express, 2010 WL 2330338, at *12 (M.D.Ga. June 4, 2010) (citing Barfield, 911 F.2d at 650). Further, while an EEOC report may frame an issue, the report itself may not be interjected to create an issue of fact. Id. (quoting Williams v. Ala. Indus. Dev. Training, 146 F.Supp.2d 1214, 1224 (M.D. Ala. 2001)). The EEOC report at issue in this case presents numerous obstacles, i.e., the report is unsigned and unsworn; contains inadmissible and unsupported legal conclusions; and generally is incomplete (none of the statements or other evidence upon which the investigator purportedly relies are attached to the report). To the extent that the Court cites to the report, the purpose is to clarify facts that are otherwise not in dispute.

solely against Plaintiff. (Doc. 18-2, ¶ 42). At some point, Plaintiff was invited into the meeting to address Simmons' allegations. (Doc. 18-2, ¶ 33-34; Doc. 18-5, p. 93). Plaintiff denied making any statement regarding Simmons being "queen of the throne" or "heir to the throne." (Doc. 18-2, ¶ 34; Doc. 18-4, p. 7). The meeting concluded with the two women agreeing that they could continue working together. (Doc. 18-4, p. 7; Doc. 18-5, p. 93).

The nursing home's Administrator Phil Herndon continued to investigate the matter. (Doc. 18-2, ¶ 35). Concerned that during her weekend shifts Plaintiff routinely supervised both Simmons and the other LPNs who witnessed the alleged interaction, Herndon determined it wise to discover (1) whether Plaintiff made the alleged statement; and (2) if Plaintiff did make the statement whether she intended the comment to be derogatory toward Simmons. (Doc. 18-2, ¶¶ 35-36). Herndon obtained written statements from Stephanie Burgess and Yolanda Mincey, who both purportedly verified the statement made by Plaintiff. (Doc. 18-2, ¶ 37; Doc. 19-1, p. 3). Herndon ultimately concluded that Plaintiff made an intentionally derogatory comment and that she lied about making the statement in the course of the investigation. (Doc. 18-2, ¶¶ 37-38).

Making false statements constitutes a violation of LCHS's company policies. (Doc. 18-2, ¶ 39). Additionally, because Plaintiff served as a part-time supervisor of both the person to whom she directed the allegedly offensive

remark and the witnesses of the interaction, LCHS categorized her behavior as unprofessional conduct. (Doc. 18-2, ¶¶ 39-40). LCHS terminated Plaintiff on February 24, 2011 on these grounds. (Doc. 18-2, ¶ 41).

Plaintiff filed a timely Charge of Discrimination with the EEOC, alleging that LCHS discriminated against her on the basis of her race when the nursing home terminated her for making an allegedly disparaging statement toward a co-worker but did not terminate a white co-worker, who she contends made a substantively similar remark. (Doc. 1, ¶¶ 9, 29-30). The EEOC issued Plaintiff a Notice of Right to Sue on February 3, 2014. (Doc. 1, ¶ 10). This lawsuit ensued.

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however,

make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**V.   DISCUSSION**

Plaintiff asserts that Defendants UHS-Pruitt and LCHS discriminated against her on the basis of her race in violation of Title VII by treating her differently than a similarly-situated employee of another race and argues that

Defendants' proffered reasons for terminating her are mere pretext for race discrimination. Plaintiff further contends that her former employer caused damage to her personal and professional reputation, subjected her to the intentional infliction of emotional distress, and conspired to deprive her of both her job and her right to equal protection. Defendants deny these allegations. Finding that Plaintiff has failed to meet her evidentiary burden to prove her allegations of race discrimination, and determining that Plaintiff's remaining claims lack any cognizable merit, the Court concludes that Defendants' are entitled to judgment as a matter of law.

### A.    Claims Against UHS-Pruitt

Defendants move the Court to dismiss Defendant UHS Pruitt Holdings, Inc. ("UHS-Pruitt") as a party to this case. Plaintiff alleges in her Complaint that UHS-Pruitt and LCHS engaged in a joint venture in the management and operation of the nursing home formerly known as Heritage Healthcare of Valdosta. (Doc. 1, ¶¶ 14-19). According to Plaintiff, Defendants are thus jointly and severally liable for discriminating against Plaintiff in her employment. UHS-Pruitt disputes this characterization and shows that UHS-Pruitt is a holding company that does not otherwise participate in the business of LCHS. Therefore, UHS-Pruitt is not liable for any alleged violations of Title VII.

Title VII defines an employer as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 2000e(b). The term "employer" is to be interpreted liberally. See Lyes v. City of Riviera, Fla., 166 F.3d 1332, 1341 (11th Cir. 1999). In line with that liberal construction, the Eleventh Circuit recognizes three doctrines by which an employee may assert a Title VII claim against an entity that is not her former employer: (1) the "single employer" theory, where the operations of two entities are so entwined that they function as a single employer; (2) the "joint employer" theory, where two entities contract for a specific task but one of the entities exercises control over the employees of the other; or (3) the "agency" theory, where an employer delegates sufficient control over employees to a third party. Id.

At issue here is whether UHS-Pruitt may be considered a joint employer for the purpose of adjudicating Plaintiff's Title VII claims. Two entities may be considered joint employers where they "contract with each other for the performance of some task and one company retains sufficient control over the terms and conditions of employment of the other company's employees." Id.; Virgo v. Riviera Beach Assoc., Ltd., 30 F.3d 1350, 1359-60 (11th Cir. 1994). The joint employer analysis focuses on "the degree of control an entity has over the

10

adverse employment decision on which the Title VII suit is based." <u>Llampallas v. Mini-Circuits, Lab, Inc.</u>, 163 F.3d 1236, 1244-45 (11th Cir. 1998).

The evidence does not support a finding that UHS-Pruitt and LCHS jointly employed Plaintiff. First, there is no evidence of a contract between UHS-Pruitt and LCHS. (Doc. 18-2, ¶¶ 8-9). Further, the undisputed facts show that UHS-Pruitt is a holding company with no employees. (Doc. 18-2, ¶¶ 6, 16). LCHS is a subsidiary of United Health Services of Georgia, Inc., which is a subsidiary of UHS-Pruitt. (Doc. 18-2, ¶ 6). UHS-Pruitt is a separate corporate entity that does not participate in the management or business of LCHS; does not exercise control over the terms and conditions of employment of LCHS's employees; and does not participate in decisions to hire or to terminate any LCHS employees, including Plaintiff. (Doc. 18-2, ¶¶ 7, 10-15, 17, 19).

Plaintiff has failed to produce any evidence that UHS-Pruitt exercised any degree of control over LCHS and its employees. Accordingly, the Court finds that no joint employer status exists between the two Defendants and dismisses Plaintiff's claims against UHS-Pruitt.

## B.   Race Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment

because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff must establish a prima facie case of discrimination through either direct or circumstantial evidence. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004). Claims of race discrimination premised on circumstantial evidence, as is the present case, are evaluated under the burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In order to make out a prima facie case under this framework, the plaintiff first must set forth "facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff is able to do so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). The employer "need not persuade the court that it was actually motivated by the proffered reasons." Id. at 254-55. "If the employer satisfies its burden of articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." Wilson, 376 F.3d at 1087.

### 1.    Prima Facie Case

To establish a prima face case of discriminatory discharge, Plaintiff must produce evidence that (1) she is a member of a protected class; (2) she was

qualified for the position she held; (3) she was terminated from that position; and (4) either she was treated less favorably than a similarly situated individual outside his protected class or she was replaced by a person outside of her protected class. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802). "If the plaintiff can make this showing – which is 'not onerous' – the establishment of a prima face case creates a presumption that the employer discriminated against the plaintiff on the basis of race." Flowers v. Troup Cty. School Dist., 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting Burdine, 450 U.S. at 253-54).

Here, it is undisputed that Plaintiff, who is African American, is a member of a protected class; that she met the requisite qualifications as an LPN; and that she suffered an adverse employment action when LCHS terminated her. However, Plaintiff's prima facie case for race discrimination fails because Plaintiff has not produced evidence that she was treated less favorably than a similarly situated employee of another race.[5]

To draw a valid comparison, the plaintiff must demonstrate that she and any proffered comparators "are similarly situated in all relevant aspects." Holifield, 115 F.3d at 1562. In the context of disciplinary action, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent

---

[5] Plaintiff has no knowledge of the individual, if any, who filled her LPN position after her termination. (Doc. 18-5, p. 83).

13

courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). "[I]t is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holified, 115 F.3d at 1562; see also Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1281 (11th Cir. 2008) ("The most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishment imposed."). Summary judgment is appropriate where the plaintiff fails to demonstrate the existence of a similarly situated employee and where there is no other evidence of discrimination. Holifield, 115 F.3d at 1562.

Plaintiff offers only one comparator for the Court's consideration: Stephanie Burgess. According to Plaintiff's deposition testimony, Burgess, who also worked as an LPN for Defendants, initiated the conversation about Jennifer Simmons. (Doc. 18-5, p. 91). It was during this interchange that Simmons purportedly overheard Plaintiff utter the allegedly offensive remark that Simmons was either "queen of the throne" or "heir to the throne." Plaintiff claims that Burgess made a similar comment. (Doc. 18-5, p. 92). However, to Plaintiff's knowledge Burgess was neither subjected to an investigation nor terminated. (Doc. 18-5, pp. 108-09, 128, 136).

14

Defendants argue that Burgess is not a proper comparator because Plaintiff served in a supervisory capacity and Burgess did not. A comparator need not have the same job title as the plaintiff to qualify as a comparator: "Admittedly, differences in job ranks between a plaintiff and another employee are not, in and of themselves, dispositive as to whether the two individuals may be compared for purposes of evaluating a discrimination claim." Rioux , 520 F.3d at 1281 (citing Lathem v. Dep't of Children & Youth Servs., 172 F.3d 786, 793 (11th Cir. 1999) (finding that plaintiff and her supervisor could function as similarly situated comparators because both were subject to the same employment policy and violated the same rule). Disparities in job title and responsibilities may play a role in deciding whether two employees are similarly situated where there is evidence that application of an employer's policy differs based on the higher expectations set by an employer for a supervisory employee. See Thompson v. Tyson Foods, Inc., 939 F.Supp.2d 1356, 1368 (M.D.Ga. 2013).

There is not enough evidence in the record for the Court to draw any meaningful conclusion about the role Plaintiff's weekend supervisor title played in LCHS's decision to terminate Plaintiff and to take no ostensible action against Burgess. Ultimately, the distinction does not matter, though, because Plaintiff has produced no evidence beyond her mere allegation that Burgess engaged in

similar conduct. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion"). Plaintiff has made no effort to expound on what Burgess may or may not have said in relation to Simmons. Further, Plaintiff offers no evidence that Simmons or any other employee ever complained about commentary made by Burgess or that Burgess was less than truthful when confronted with her allegedly derogatory remarks. In the absence of any evidence that Plaintiff and Burgess engaged in similar conduct but were disciplined in different ways, the Court cannot accept Burgess as a sufficient comparator for the purpose of establishing Plaintiff's prima facie case.

### 2.    Pretext

Even if Plaintiff could establish a prima facie case of discrimination, the Court still finds that Defendants are entitled to summary judgment because Plaintiff has made absolutely no effort to confront Defendants' proffered legitimate, nondiscriminatory reason for terminating her or to show that the reason given was merely a pretext for race discrimination.[6]

---

[6] In her response brief, Plaintiff's opposition to Defendants' motion for summary judgment concludes after her attempt to produce a proper comparator to support her prima facie case. Plaintiff neglected to address the issue of pretext in any meaningful fashion. Giving Plaintiff the benefit of the doubt, the Court has stretched its analysis to include the prefatory remarks Plaintiff included in her introductory paragraphs that at least touch on pretext.

The employer has the burden of production, not persuasion to articulate a nondiscriminatory reason for termination, a burden that has been described as "exceedingly light." <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 769 (11th Cir. 2005). To establish that the employer's proffered reason is nothing more than a pretext for discrimination, a plaintiff "must demonstrate that the proffered reason was not the true reason for the employment decision. The plaintiff may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotations and punctuation omitted).

Defendants have met their "exceedingly light" burden to articulate what a reasonable fact finder may consider a nondiscriminatory reason for terminating Plaintiff. After conducting an investigation and concluding that Plaintiff engaged in unprofessional conduct and then provided a false statement when questioned about the behavior of which she was accused, LCHS made the decision to terminate Plaintiff's employment. While Plaintiff may disagree with the reason proffered by her employer for her termination, she has utterly failed to confront this reason head on and to present even a shred of evidence that LCHS's proffered reason is but pretext for discrimination. The crux of Plaintiff's pretext

argument is that she never made the "queen of the throne" or "heir to the throne" comment and hence was not dishonest when asked about the statement.[7]

Plaintiff's unsupported denial is insufficient to establish pretext. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). Further, the "inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head." Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010); see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (the inquiry is limited to the employer's belief that the employee is guilty of the misconduct; that the employee did not actually engage in the misconduct is irrelevant).

The Eleventh Circuit has repeatedly held that an employer may terminate an employee for a good or bad reason without violating federal law. See id.; see

---

[7] Plaintiff's only other attempt to establish pretext is her argument that while she was terminated for making an allegedly derogatory remark, Stephanie Burgess, a similarly situated white employee was not. As discussed above, there is no evidence that another employee accused Burgess of making any offensive comment or that Burgess was accused of lying about the same. Burgess thus is an insufficient comparator for the purpose of demonstrating pretext.

18

also <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair."); <u>Smith v. Papp Clinic, P.A.</u>, 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("[I]f the employer fires an employee because it honestly believed the employee had violated a company policy, even if it was mistaken in such belief," the discharge does not violate federal law.); <u>Nix v. WLCY Radio/Rahall Commc'ns</u>, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason all, as long as its action is not for a discriminatory reason."). Plaintiff may believe her termination unfair; however, her conclusory and unsupported allegations of race discrimination remain insufficient to convince a reasonable fact finder that LCHS's reason for terminating her was a pretext for discrimination. The Court accordingly grants Defendants' motion for summary judgment as to Plaintiff's Title VII claims.

### C.   Plaintiff's Remaining Claims

In her Complaint, Plaintiff raises three additional claims: (1) that "Defendants have caused Plaintiff to suffer and endure a severe stigma on [her] personal and professional reputation in the eyes of [her] professional peers" (Doc. 1, ¶ 38); (2) that Defendants have subjected her to intentional infliction of emotional distress (Doc. 1, ¶¶ 39-41; and (3) that Defendants, motivated by race,

conspired to "discharge Plaintiff from [her] lawfully held employment" and to "deprive Plaintiff of equal protection of the laws" (Doc. 1, ¶¶ 42-46). Plaintiff failed to respond to Defendants' motion for summary judgment on these claims. Defendants thus argue that Plaintiff has abandoned the claims and that they are entitled to summary judgment.

In several unpublished decisions, the Eleventh Circuit has held that a plaintiff may abandon her claims on summary judgment by failing to address those claims in a response brief. See Gailes v. Margeno Cnty. Sheriff's Dep't, 916 F.Supp.2d 1238, 1241-42, 1241 n. 6 (S.D.Ala. 2013) (collecting cases). However, the circuit court has not yet vocalized that same judgment in a published opinion. The court in a published opinion has indicated that a district court cannot simply grant an unopposed motion for summary judgment and must consider the merits of the motion. See United States v. One Piece of Real Prop., 363 F.3d 1099, 1101-02 (11th Cir. 2004). In light of this apparent conflict in approach, and borrowing the wisdom of another jurist in this district, this Court "declines to treat any of the Plaintiff's claims as abandoned and instead considers the merits of the Defendants' motion on these claims." Jolly v. Triad Mech. Contractors, 2015 WL 1299852, at *8 n. 16 (M.D.Ga. March 23, 2015).

### 1.   Defamation

Plaintiff alleges in Count II of her Complaint that "[b]y discharging Plaintiff for no reason, or at best a pretextual reason, the Defendants have caused Plaintiff to suffer and endure a severe stigma on [her] personal and professional reputation." Plaintiff cites no legal basis for this claim. To the extent that Plaintiff attempts to assert a claim for slander or defamation, Plaintiff's claims are barred by the applicable statute of limitations. Pursuant to O.C.G.A. § 9-3-33, "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues." A suit for slander or defamation qualifies as one relating to injury to the reputation. O.C.G.A. § 51-5-4(a); Infinite Energy, Inc. v. Pardue, 310 Ga.App. 355, 362 (2011).

Plaintiff premises this claim on her discharge, which occurred on February 24, 2011. Plaintiff did not file this lawsuit until April 14, 2014, which falls well outside the statute of limitations. The Court therefore grants Defendants' motion for summary judgment as to Count II of Plaintiff's Complaint.

### 2.   Intentional Infliction of Emotional Distress

In Count III of her Complaint, Plaintiff alleges that by discharging her, Defendants inflicted intentional emotional distress on Plaintiff. To recover on an intentional infliction of emotional distress claim, a plaintiff must show that "(1)

defendants' conduct was intentional or reckless; (2) defendants' conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. Abdul-Malik v. AirTran Airways, Inc., 297 Ga. App. 852, 856 (2009). Georgia law in general does not recognize termination as rising to the level of intentional infliction of emotional distress. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) (Georgia is an at-will employment state and does not recognize wrongful discharge of at-will employees); see also Phillips v. Pacific & S. Co., 215 Ga. App. 513, 515 (1994) (discharge for whatever reason, "without more, gives rise to no claim for the intentional infliction of emotional distress"). "Even if the employee is not terminable at will, discharge for an improper reason does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based." Id.

Because the Court finds this claim devoid of any merit, the Court grants Defendants' motion for summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### 3.   Conspiracy to Deprive Plaintiff of Due Process

The legal basis for the allegations asserted in Count IV of Plaintiff's Complaint is unclear. Plaintiff alleges that Defendants conspired through their policies and actions to discharge Plaintiff; that in so doing Defendants deprived

Plaintiff of equal protection; and that Defendants were motivated by race.[8] To the extent that Plaintiff attempts to raise a claim under 42 U.S.C. § 1985(3), summary judgment is due to be granted to Defendants. To state a claim under § 1985(3), a plaintiff must allege:

> (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States.

Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010) (citation omitted). When the alleged conspirators are private actors, as here, "the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment." Id. "The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude." Id. The Supreme Court has specifically exempted the rights protected under Title VII or

---

[8] Paragraph 45 of Plaintiff's Complaint specifically alleges, "The acts of Defendants were motivated by race in that they desired to have him replaced by a white male." There is no evidence in the record relating to Plaintiff's replacement. It is clear to the Court that at least the second part of this statement was made in error and possibly is the result of cutting and pasting from a previous complaint. The Court cautions Plaintiff's counsel to take more care in drafting future pleadings to avoid making potential misstatements of fact.

under 42 U.S.C. § 1981 as insufficient to form the basis of a § 1985(3) claim against private actors. Id.

To the extent that Plaintiff intends to assert a claim under § 1981, Defendants are also entitled summary judgment. Section 1981 provides that all persons in the United States "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The same analytical framework and proof requirements for Title VII discrimination cases applies to claims of race discrimination raised under § 1981. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, for the same reasons Plaintiff's Title VII claim fails, any claim Plaintiff may allege under § 1981 must likewise fail.

## VI.   Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 18) is granted, and this case is dismissed with prejudice.

**SO ORDERED**, this the 1st day of February, 2016.


*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**


aks